## United States Coal & Coke Co. v. Gilley et al.

March 18, 1947.

James S. Forester, Judge.

James Sampson and Sampson & Sampson for appellant.

Astor Hogg and Golden & Lay for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

This is a second appeal. See 296 Ky. 522, 177 S. W. 2d 877. On Gilley's original claim the Board had adjudged him totally permanently disabled, awarding $15 per week for the statutory period. On appeal we did not consider the case on merits, but reversed and directed remand to the Board, because it had not passed on a motion to reopen, made after submission, but before award. We said the evidence as to extent of disability was close, and under the facts set out in an affidavit, the case should have been reopened for introduction of newly discovered evidence showing change of condition. However, by reference to the original record we find that the Board, apparently doubtful of its position, had held the case open. When the case went back it was considered on the old record and additional evidence. On November 20, 1945,

the Board rendered opinion and award. A stipulation had left open only the extent of disability.

The Board in opinion remarked that there was a sharp conflict of evidence, but said that claimant's disability was confined to his right hand below his wrist, the ankylosis to a slight degree extending beyond the middle finger into his hand. The Board further said:

"Some of the doctors for defendant fix the disability at 15 to 20 per cent. Dr. Stacey for plaintiff fixes it at 50 per cent. We find that the extent or percentage of increased impairment due to pre-existing diseases does entitle the defendant to a reduction of compensation below that which plaintiff would have been entitled had his permanent injuries been equivalent to the loss of the entire hand."

The Board also stated that Gilley was totally disabled, attributing 75 per cent to pre-existing diseases, and 25 per cent to the injury, and directed the former order set aside, not to affect payment theretofore made. The Board then awarded claimant $3 per week, beginning at the termination of the thirty weeks for which compensation had theretofore been paid, for 305 weeks.

Gilley appealed to the circuit court, and in his petition stated facts as above substantially set out, and asked that the matter be re-referred, with directions to the Board to enter an award for $7500 for a period of 500 weeks, subject to the credit. He alleged that he was permanently totally disabled, solely from the accident; that the Board was in error, after finding as a fact that claimant was totally disabled, in attributing any part of disability to pre-existing disease, since there was a lack of evidence of any disability due to pre-existing diseases, hence the Board could not as a matter of law attribute any part to pre-existing disease; that upon the finding that plaintiff was totally disabled, and this "upon conflicting evidence," the award should have stood for total permanent disability.

The circuit court held that the award was not in conformity with the Compensation law. We take the following excerpt from the judgment:

"The opinion of the Board stated that the testimony of the defendant's doctors establishes that the difficulty

experienced in healing what otherwise was a minor injury, resulted from a diabetic condition of the patient; and 'we find that the extent of the percentage of increased impairment due to pre-existing diseases does entitle defendant to a reduction in compensation,' and in the findings of fact the Board states: 'The plaintiff sustained an injury * * * and that since said injury plaintiff has been totally disabled.' "

The court concluded that there is no evidence showing that before the injury plaintiff had any disease. The court then remanded, ordering the Board to make award for total permanent disability. The Court apparently, as evidenced by the above, held that since his conclusion was that there was no evidence of any pre-existing disease, the matter resolved itself into a pure question of law which gave the court the right to fix the award, or as was done in effect, to direct the Board to let stand its former award, subject to the credit. If the court was in error in concluding that there was no evidence of pre-existing disease, then he was in error in directing the extent of the award.

In order to reach what we deem a correct conclusion it is necessary to do what was not done on the former appeal; to review the facts to a certain extent, some of which apparently did not serve to help claimant's case before the Board on re-opening. Gilley was a motorman in appellant's mines. On the day of the injury he had exchanged places with his coupler, and at the time was riding the cars, and as they moved around a curve the index finger of his right hand was caught between the cars and severely mashed. He was taken to the hospital and his finger was amputated about the second joint. He remained there a few days, leaving before his finger had healed. Later he came back and Dr. Petty found infection and gave treatment, which did not bring about satisfactory result, and the finger was amputated between the joint and knuckle, leaving a short stub. The infection persisted, and the hand was opened for drainage and treatment; later the infection disappeared and the stump was well healed.

There is no claim that the treatment was not the best, although Dr. Petty and another doctor suggested further amputation to relieve stiffness and the contract-

ing of the stump toward the palm of the hand, but claimant would not agree. There was some ankylosis in the hand, which the doctor said was from infection and nonuse.

By reference to the old record we find that shortly after the injury Gilley had signed a settlement under which he was paid for loss of a portion of his finger. However, on June 9, 1941, he filed application for adjustment of claim for "loss of middle finger and infection from the injury has rendered arm and hand useless for work." Within a short time thereafter he filed an amended application, stating that "blood poisoning had set in and his whole body had been affected to the extent that he was permanently totally disabled." On hearing a referee found Gilley permanently totally disabled, and the full Board sustained the referee, but apparently being in some doubt as to permanency, held the case open for future developments.

Following our former direction the Board sustained the motion to reopen; upon this hearing there was proof relating to Gilley's employment and earnings, before and after the award on the first hearing, March 2, 1943. In October 1942 Gilley was employed by the Baltimore Fairfield Ship Yards, and worked until January 1944, without material loss of time. Most of the time he worked as a pipe fitter helper; some time as a pipe fitter and painter. The work generally, as testified to by the manager, required the use of both hands and arms, though Gilley says that he did little work but spent much of his time in conversation. His pay roll shows that he sometimes put in as much as 52 hours per week, at times drawing as much as $83 per week; his average is shown to have been $55 per week.

The medical examiner, whose testimony was taken on interrogatories, says that he examined Gilley when he applied for work, making a complete examination except as to his feet. He found and reported him physically fit for work, notwithstanding the missing finger. This doctor did not make a blood or urine test. We point to this because the Board in its last finding said that the testimony of the defendant's doctors had established the fact that the difficulty in the healing of the hand or finger, classified as a minor injury, resulted from the

then existing diabetic condition. These doctors had found some time after injury a sugar condition which indicated diabetes, and reasonably reached the conclusion that the disease impeded the healing of the hand.

On the final hearing medical proof was introduced which showed that any anemic condition existing in the earlier stages had been eliminated, and that there was not then, nor had there been any blood poisoning or any systemic disability arising from the infection. Dr. Foley, who had first testified as to his conclusions reached upon examination of Gilley, said he had lost three fingers by amputation from his left hand, but later corrected himself and testified that he had found that the hemoglobin content of Gilley's blood was below normal, which he thought was due to the infection. Contrary to this, several doctors testified that Gilley had never sustained any general blood stream infection. One of claimant's doctors disagreed with Dr. Foley, since he found blood pressure normal, and said that the hemoglobin count would improve with proper nourishment. We think this evidence as to blood poisoning, or the absence thereof, was sufficient to justify the Board in concluding that there was no general infection arising from the injury. There was testimony of a former accident to Gilley, the breaking of an arm, which had caused a diminution in its size; the proof makes it clear that the injury to the finger had nothing to do with this defect.

Without going further into details of the proof introduced on the two hearings, we are of the opinion that there was sufficient probative testimony to show there was a material change of condition, and it becomes unnecessary to probe further into the question as to whether or not there was pre-existing diabetic condition, though such proof as was introduced would justify the Board in its conclusion that the condition retarded the healing process.

It seems to us that the chancellor based his order directing entry of the former award, instead of remanding for further proceedings, on the statement in the Board's opinion that "since said injury plaintiff has been totally disabled," without regard to other portions of the opinion and findings holding that the testimony established the fact that the difficulty in healing was due

to the diabetic condition, and that all disability sustained resulting from the injury was confined to the hand below the wrist, and the disability was not as great as if he had lost a hand. This last was apparently the basis of the award, as we read the somewhat confusing opinion as a whole.

Counsel for appellant treats the award as one for partial permanent disability, under KRS 342.105, and argues that as the Board found the disability as above stated, it had no right to adjudge he was entitled to disability to the body as a whole, and makes a forceful argument on this point, but we need not pursue it since the only question here is whether or not the court erred in directing the Board to set aside its second award and reinstate the former one. While we have not gone into detail in recitation of proof, we have read the proof both on the first and second hearings, and from such reading it must be concluded that the court was in error in thus directing the Board. There is to our minds ample proof to show that claimant was not totally permanently disabled by the injury. There was sufficient proof of probative value to justify the Board in concluding that the anemic condition following the infection had dissipated. With this view of the whole case, the fixed rule should have been, and will be applied, that is, to the effect that where there is probative evidence which supports the Board's finding, the courts will not disturb the award. We are bound thereby when there is any evidence sufficient to justify. A citation of authorities is unnecessary. It follows that the judgment should be reversed, with directions to set it aside, and dismiss the petition.

Judgment reversed.